Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5629 | **DATE** | 3/7/2002 |
| **CASE TITLE** | Chapman vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter memorandum opinion and order on plaintiff's motion for summary judgment and motion for remand and defendant's motion for summary judgment. Plaintiff's motion for summary judgment [10-1] is granted insofar as it requests a remand of the ALJ's decision. Plaintiff's motion for remand [11-1] and defendant's motion for summary judgment [18-1] are denied. This case is hereby remanded to the Commissioner of Social Security for further proceedings consistent with this opinion. Judgment is entered pursuant to Rule 58 F.R.C.P. remanding case to U.S. Agency.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | 3/11/02 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK 02 MAR -8 AM 11:53 | 3/8/2002 date mailed notice | |
| SM | courtroom deputy's initials | Date/time received in central Clerk's Office | SM mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DELORIS CHAPMAN, )
 )
    Plaintiff, )
 )
v. ) Case No. 01 C 5629
 )
JO ANNE B. BARNHART, ) Magistrate Judge Ian H. Levin
Acting Commissioner of the Social Security )
Administration, )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Deloris Chapman ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner (the "Commissioner") of the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB")and Social Security Insurance ("SSI") under the Social Security Act (the "Act"). Before the Court is Plaintiff's Motion for Summary Judgement and Motion for Remand, and Defendant's Motion for Summary Judgment. For the reasons set forth below, the Court remands the case for proceedings consistent with this opinion.

## PROCEDURAL HISTORY

On February 4, 1997, Plaintiff applied for DIB and SSI alleging that she became disabled on May 23, 1996 due to an injury she sustained to her right hand while she was working. (R. 100-02, 119, 252-54.)[1] Plaintiff's applications for benefits were denied, and subsequently, upon review,

---

[1]References are to the certified administrative record prepared by the Commissioner and filed with this Court pursuant to 42 U.S.C. § 405(g).



Plaintiff's request for reconsideration was also denied. (R.90-93, 96-98, 262-264.)

Because her DIB and SSI applications had been denied, Plaintiff requested a *de novo* hearing before an Administrative Law Judge ("ALJ"). (R. 99.) On June 17, 1998, Plaintiff appeared before an ALJ at an administrative hearing. (R. 32.) The ALJ continued the hearing to November 10, 1998 so that Plaintiff could obtain counsel and complete a consultative examination of her right hand. (R. 34-63, 49-50.) No sworn testimony was taken at the June 17, 1998 hearing. (R. 34-63.) On November 10, 1998, Plaintiff, again, appeared without counsel at the administrative hearing (R. 66) and the ALJ proceeded to conduct the hearing.

On December 4, 1998, the ALJ issued his decision finding that Plaintiff was not disabled because her impairment(s) had only a slight or minimal effect on her ability to perform work-related activities. (R. 24.) Plaintiff filed a request for review of the ALJ's decision, and on June 8, 2001, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. (R. 5-6, 16.) Pursuant to 42 U.S.C. § 405(g), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## **BACKGROUND FACTS**

### I. PLAINTIFF'S TESTIMONY/EVIDENCE

Plaintiff was born on June 1, 1960 and was thirty-eight years old at the time of the administrative hearing. (R. 45, 83, 89.) Plaintiff testified that she completed the sixth grade (R. 45-46); however, she claimed that she completed the eighth grade on her Disability Report. (R. 136.) She asserted that she could write, but she could not read. (R. 43-44) In addition, she complained about problems with her memory.[2] (R. 72.) Furthermore, Plaintiff testified that she had pain in her

---

[2]When questioned by the ALJ, Plaintiff could not initially remember the name of her doctor and stated that "my mind forgets and I can't think about nothing." (R. 72.)

2

right hand when she lifted things and washed dishes. (R. 141.)

Ms. Pecolia Helm, a non-attorney friend of Plaintiff's appeared with Plaintiff at the November 10, 1998 administrative hearing.[3] (R. 66.) Ms. Helm stated that Plaintiff was a "slower learner," that Plaintiff could not read or write, and that she had helped Plaintiff fill out paperwork. (R. 74.) Ms. Helm also stated that she assisted Plaintiff by "showing her around" and helped her find different places and phone numbers. (R. 74.)

Plaintiff testified that she has worked in the past. (R. 77.) At Plaintiff's last job, which she worked at for two and half years, she was responsible for "gluing stuff," packaging items and shipping boxes. (R. 76-79.) Plaintiff stated that she was subsequently fired after she injured her right hand on the job. (R. 79, 83.) In addition, prior to this job, Plaintiff worked as a cafeteria worker. (R. 78.) After being fired, Plaintiff testified that she looked for other work and attempted other jobs, but that she stopped and could not work because of problems with her hand. (R. 72, 76, 79, 83.)

## II.  MEDICAL EVIDENCE

Plaintiff was treated in the emergency room on January 18, 1996 after burning her right hand with hot glue while cleaning a glue gun at work. (R. 154.) Her diagnosis was a second degree burn to the distal end of her right middle finger. (R. 154.) Plaintiff was prescribed Tylenol #3 and instructed to obtain follow-up care with her doctor. (R. 155)

In late 1996, Plaintiff sought further medical treatment for problems with her right hand and

---

[3]Ms. Helm also appeared with Plaintiff at the June 17, 1998 administrative hearing. (*See* R. 74, 34-63.) At that hearing, Ms. Helm informed the ALJ that she had helped Plaintiff fill out her paperwork because Plaintiff was "kind of slow" and did not know how to read. (R. 36.) Ms. Helm also stated (after the ALJ indicated that he was going to send Plaintiff to a doctor for a consultative examination of her hand) that she believed Plaintiff needed to see a "psychiatry doctor." (R. 49-50.)

3

wrist. (R. 167, 210.) For instance, in October, 1996, Plaintiff was seen in the emergency room for problems associated with her right wrist. (R. 210.) In December, 1996, Plaintiff reported pain in the area of her original burn injury. (R. 210.) Pain medication was prescribed and thereafter, Plaintiff received treatment for her right wrist and hand. (R. 167, 210.)

In January, 1997, Plaintiff complained of pain and numbness in her right hand. (R. 160) Electromyogram (EMG) testing of Plaintiff's upper extremity revealed no abnormalities. (R. 160.) In addition, X-rays of Plaintiff's right wrist were also normal. (R. 208.) Plaintiff, however, continued to complain of pain in her right wrist and hand. (R. 165, 167, 209.) Plaintiff was prescribed pain medication and instructed to undergo occupational therapy. (R. 196, 198, 200.)

On March 7, 1997, Dr. Allen[4] reported that Plaintiff had sustained a first degree burn to the index and middle fingers on her right hand. (R. 165) Plaintiff also complained of pain in her right wrist. (R. 165.)

On March 11, 1997, an occupational therapist conducted an outpatient occupational therapy evaluation of Plaintiff. (R. 167.) Plaintiff's active range of motion test, manual muscle test and grip strength test were within normal functional limits. (R. 168.) Plaintiff, however, stated that she experienced pain during the evaluation and she had a slight decrease in her right grip and pinch strength. (R. 168.) Plaintiff also reported, during the evaluation, that she had pain while working on a keyboard of a computer, washing dishes, and performing other activities. (R. 167.) The therapist recommended that Plaintiff receive therapy three times a week. (R. 168.)

On April 4, 1997, Dr. Vic T. Tsai conducted an initial examination Plaintiff. (R. 183.) Dr. Tsai reported that Plaintiff had not significantly improved after her initial injury (which had been

---

[4]The first name of Dr. Allen is not clear from the record.

followed by therapy). (R. 183.) Dr. Tsai noted that Plaintiff complained of residual pain in her right wrist and pain in her right fingers when squeezing or making a tight grip. (R. 183.) Plaintiff also had some soreness of her forearm near the wrist area, especially when pressure was applied. (R. 183.) Plaintiff's range of motion was fair, sensation was satisfactory, and no clinical signs of nerve problems or obstructed blood flow. (R. 183.) Dr. Tsai diagnosed Plaintiff as having residual tendinitis of the flexor carpi ulnaris tendon in the wrist area. (R. 183.) He advised Plaintiff to continue wearing her wrist brace, especially during the nighttime and prescribed iontophoresis treatment (i.e., occupational therapy). (R. 183, 187.)

Dr. Tsai continued to treat Plaintiff after her initial examination. (R. 72-73.) Dr. Tsai's clinical progress notes, covering treatment from April 1997 to June 1998, reflect that Plaintiff continued to complain of pain in her right hand and wrist. (R. 184-88, 240-44.) At times, she also reported numbness in her right fingers. Dr. Tsai noted that Plaintiff should not lift heavy objects with her right hand, after Plaintiff reported that even though her hand felt better, it still hurt when she picked up anything heavy. (R. 184-87, 240-44.) Furthermore, Plaintiff reported that she saw Dr. Tsai on a monthly basis where she received shots, had hand treatments and was prescribed pain medication. (R. 35, 38, 50, 53, 55, 79, 152.)

On April 9, 1997, Dr. R. Mukunda performed a consultative examination of Plaintiff. (R. 169-71) During the examination, Plaintiff complained that she had constant pain in her fingers that went up to her wrist joint and she had trouble lifting a gallon with her right hand. (R. 169.) Plaintiff also stated that bending her wrist caused pain. (R. 169.) Dr. Mukunda, however, reported that Plaintiff described her pain as being mild. (R. 169.) In addition, Plaintiff reported that she used Ibuprofen and Tylenol as needed for her pain. (R. 169.)

5

Dr. Mukunda found that Plaintiff had no anatomical abnormalities of her upper extremities and there was no evidence of inflammation, redness, effusion, or limitation of motion in any of Plaintiff's joints. (R. 170.) Plaintiff had full and equal grip strength bilaterally, and demonstrated a full range of motion of her right wrist. (R. 170.) Plaintiff's grasp strength was normal and her finger dexterity was intact. (R. 170.) In addition, there was no evidence of muscle atrophy, and Plaintiff's skin appeared normal. (R. 170.) Dr. Mukunda stated that Plaintiff had no difficulty in focusing and concentrating for the examination and she had no problem with recalling events. (R. 171.) Furthermore, Dr. Mukunda's diagnostic impression was a history of a burn injury to Plaintiff's right hand. (R. 171.)

In May, 1997, Plaintiff's occupational therapist reported that the range of motion in her right wrist and fingers were within normal limits. (R. 192.) In addition, the therapist reported that Plaintiff had 35 pounds of grip strength, 13 pounds of three-point prehension strength, and 18 pounds of lateral prehension strength. (R. 192.) Plaintiff's objective complaints of pain had also decreased. (R. 192.) Moreover, Plaintiff attended thirty-one of thirty-three therapy sessions; however, she was discharged from occupational therapy after she failed to reschedule an appointment. (R. 213.)

Plaintiff also received therapy through Midwest Hand Care. (R. 232-39.) While receiving treatment, Plaintiff reported pain and problems with her grip as well as her range of motion. (R. 239.) She stated that she was having problems performing routine tasks around the house. (R. 238.) Plaintiff received various treatments and was fitted with a splint. (R. 239.) Plaintiff's therapist found her symptoms to be consistent with tendinitis. (R. 239.) Plaintiff reported some improvement with therapy; however, as of April, 1998, she continued to experience tenderness and some diminution in her strength. (R. 232-39.)

In January, 1998, Dr. Tsai reported that Plaintiff's symptoms occurred mainly with lifting heavy objects, such as skillets or pans. (R. 243.) Moreover, in February, 1998, Dr. Tsai recommended that Plaintiff do no heavy lifting with her right hand for the next few months. (R. 241.)

Dr. James P. Ahstrom, Jr., performed a consultative examination of Plaintiff in August, 1998. (R. 245-46.) Dr. Ahstrom reported that Plaintiff's examination was essentially normal, despite her complaints of pain in her right wrist. (R. 246.) On one assessment form, Dr. Ahstrom noted that Plaintiff's ability to lift, carry, push and/or pull, and handle objects may be limited due to pain in her wrist, but indicated that the reason for her pain was unclear. (R. 250-51.) In addition, after reviewing the records, Dr. Ahstrom indicated that Plaintiff was not restricted in the use of her hand or wrist and he completed a medical assessment form consistent with this opinion. (R. 245, 247-49.)

### III. THE ALJ'S FINDINGS AND DECISION HEREIN.

The ALJ determined that Plaintiff had not engaged in any substantial gainful employment since May 23, 1996, the date Plaintiff stated she was unable to work. (R. 21.) The medical evidence established that Plaintiff had sustained a right hand injury with a second degree burn to the distal end of her right middle finger. (R. 22.) The ALJ determined that based on the objective medical evidence that Plaintiff's right hand impairment did not significantly limit her ability to perform basic work-related activities; such as walking, standing, lifting, reaching and handling; consequently, her hand impairment was not "severe." (R. 23.) Therefore, Plaintiff's impairment only had a slight or minimal effect on her ability to perform basis work-related activities. (R. 24.)

In addition, the ALJ found that Plaintiff's testimony concerning her pain and functional limitations was not credible evidence in the evaluation of her residual functional capacity. (R. 24.)

7

Accordingly, the ALJ determined that Plaintiff was not disabled under the terms of the Act. (R. 24.)

## **LEGAL STANDARDS**

### I. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited. The Social Security Act at 42 U.S.C. § 405(g) establishes that the Commissioner's findings as to any fact are conclusive if they are supported by substantial evidence. *See also Brewer v. Charter*, 103 F.3d 1384, 1390 (7th Cir.1997). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Pearles*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Brewer*, 103 F.3d at 1390. The court may nor reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *See Brewer*, 103 F.3d at 1390. Conclusions of law, however, are not entitled to deference. Thus, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *See Binion v. Carter*, 108 F.3d 780, 782 (7th Cir.1997).

### II. STATUTORY AND REGULATORY FRAMEWORK

To receive disability benefits, an SSI or DIB claimant must be "disabled" as defined by the Social Security Act. *See* 42 U.S.C. § 423(a)(1)(D); 42 U.S.C. § 1382(a); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir.1993). An individual is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). *See also Jones v. Shalala*, 10 F.3d 522, 523-24 (7th Cir.1993). To satisfy this definition, an individual must have

8

a severe impairment that render her unable to do her previous work or any other substantial gainful activity that exists in the national economy. *See* 20 C.F.R. § 404..1505(a).

The Social Security regulations delineate a five step process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. § 404.1520(b). If she is, the claimant is not disabled and the evaluation process is over, if she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "which significantly limits...physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R Pt. 404, Subpt. P, App.1. If it does, than the impairment is acknowledged by the Commissioner to be conclusively disabling. *See* Brewer, 103 F.3d at 1391.

If the impairment does not so limit the claimant's remaining capabilities, the fourth step is that the ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of his past work. RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also* Social Security Ruling 96-8p (1996). If the claimant can perform her past relevant work, he will be found not disabled. See 20 C.F.R. § 404.1520(e).

For the fifth step, if the claimant shows that his impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant -- in light of her age, education job experience and functional capacity to work is capable of performing other work and that such work exists in the national economy. *See* 42 U.S.C.

9

§ 423(d)(2); 20 C.F.R. § 404.1520(f). *See also Brewer*, 103 F.3d. 1391.

## ANALYSIS

Plaintiff seeks reversal or remand of the ALJ's decision finding that Plaintiff is not disabled.

Upon review of the record, the Court finds that an outright reversal is not warranted. Separately, as it relates to remand, Plaintiff alleges, *inter alia*, that (1) the ALJ failed to develop a full and fair record because he did not obtain a psychological evaluation of Plaintiff; (2) the ALJ erred by finding that Plaintiff's hand impairment was not "severe;" and (3) new and material evidence should be here considered; particularly, but not limited to, the psychological report of Dr. L.S. Boddapati. *See generally,* Pl.'s Mot. for S. J. & Pl.'s Mot. for Remand.

### I. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

#### A. Duty to Fully Develop the Record Issue

Plaintiff initially argues that the ALJ failed to fully develop the record because he did not obtain a psychological evaluation of Plaintiff to determine if a mental impairment existed. Pl.'s Mem. at 8-9. Defendant, on the other hand, argues that the ALJ was not required to obtain a psychological evaluation because the evidence did not suggest the presence of a mental impairment. Def.'s Mem. at 9-10.

A well-settled proposition regarding Social Security disability hearings is that "[i]t is a basic obligation of the ALJ to develop a full and fair record." *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir.1991) (*citing Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 860 (7th Cir.1978)). An ALJ does not act as counsel for claimant, but as an examiner who throughly develops the facts. *Thompson*, 933 F.2d at 586 (*citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). "[W]here the disability benefits claimant is unassisted by counsel, the ALJ has a duty 'scrupulously

and conscientiously [to] probe into, inquire of, and explore for all the relevant facts . . . .'" *Smith*, 587 F.2d at 860 (*citing Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)). The ALJ's obligation rises to a special or heightened duty for an unrepresented claimant unacquainted with the hearing process. *Thompson, id.* at 586-87. Failure to fulfill this duty is good cause to remand for gathering of additional evidence. *Cannon v. Harris*, 651 F.2d 512, 519 (7th Cir. 1981). On the other hand, a significant omission is usually required before a court will find that the ALJ failed to assist *pro se* claimants in developing the record fully and fairly. *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir.1994). However, the regulations provide that the ALJ will try to obtain additional evidence if the evidence before him is insufficient to determine whether a claimant is disabled or, if after weighing the conflicting evidence, he cannot reach a conclusion. 20 C.F.R. § 404.1527(c)(3).

In the present case, as seen, the ALJ had a heightened duty to full develop the record because Plaintiff appeared *pro se*. Significantly, as demonstrated by the record, there were indications Plaintiff could have a mental impairment. Plaintiff testified that she had only a sixth grade education and that she could not read. (R. 43-46.) Relevantly, Plaintiff told the ALJ that she had memory problems. (R. 36, 39, 44-46, 72.) In addition, Ms. Helm, Plaintiff's non-attorney friend, informed the ALJ that Plaintiff was "kind of slow," a slow learner, that she could not read, that she was unable to "understand," that Ms. Helm did Plaintiff's "paperwork for her" and that Ms. Helm had been showing Plaintiff how to find places, phone numbers and all that. (R. 36, 39, 74-75.) Moreover, at the July 17, 1998 administrative hearing, when the ALJ stated that he was sending Plaintiff for a consultative examination as to her right hand, Ms. Helm advised the ALJ that Plaintiff needed to see

11

a "psychiatry doctor."⁵ (R. 50.)

The record indicates that it is possible that Plaintiff had a mental impairment. The ALJ had a duty to fully develop the record to determine if Plaintiff did in fact suffer from such an impairment. Because the Commissioner has the burden of fully developing the record, the ALJ should have, at a minimum, ordered an appropriate consultative psychological examination of Plaintiff and developed the evidentiary record on this subject. *See e.g., Thompson,* 933 F.2d at 587-88.

Therefore, the Court finds that a remand on this issue is necessary.⁶

**B.     Severe Impairment Issue**

Plaintiff asserts that the ALJ erred by finding that Plaintiff's hand impairment is not "severe." Pl.'s Mem. at 11. Defendant, however, argues that Plaintiff's impairment is not "severe" because it did not significantly limit her ability to perform work-related activities. Def.'s Mem. at 10.

Step 2 of the requisite sequential analysis requires a determination of whether the claimant has a "severe" impairment or impairments. A disability claimant can be considered as not suffering from a severe impairment only if the impairment is a slight abnormality having only a minimal effect

---

⁵The ALJ made no reference to any possible mental impairment in his opinion. In response to Ms. Helm's request for a psychological evaluation of Plaintiff, the ALJ stated that Plaintiff was "all right" and having "no problem" mentally. (R. 50.) The Court, however, notes that an ALJ is not a mental health professional and cannot reach his own independent psychological determinations. *See e.g., Rohan v. Chater,* 98 F.3d 966 (7th Cir.1996).

The Court also finds to be unpersuasive Defendant's claim that the medical personnel who reported as to Plaintiff's physical problems did not mention any psychological problems. These individuals were medical doctors, etc, not mental health professionals and directed their examinations and reports solely to physical issues. Thus, their reports, respectfully, would not operate to relieve the ALJ as to his duty herein, as discussed.

⁶In view of our holding, and as Plaintiff is now represented by counsel, the Courts deems it unnecessary to address the Plaintiff's claim that the ALJ erred in proceeding with the administrative hearing without a valid waiver of counsel.

12

on a person's ability to perform the full range of work-related activities. *Anthony v. Sullivan*, 954 F.2d 289 (5th Cir.1992); *see also McDonald v. Secretary of Health and Human Services*, 795 F.2d 1118 (1st Cir.1986); *Stone v. Heckler*, 752 F.2d 1099 (5th Cir.1985). Stated otherwise, a "severe" impairment is any medically determinable impairment that would interfere with a person's ability to perform the full range of exertional and non-exertional work-related activities.

The Court finds that the ALJ did not err when he determined that Plaintiff's hand impairment was not "severe." First, as shown by the record, Plaintiff's diagnostic studies revealed that she had no abnormalities. (R. 160, 208.) Clinical signs and tests were negative. (R. 183.) Plaintiff also had a full range of motion and her grip strength was within normal limits. (R. 168, 170, 183, 192, 246.) Moreover, Plaintiff informed her doctors that her hand felt better and that her only limitation was that it hurt if she lifted heavy objects. (R. 169-71, 184-85.)

Plaintiff was evaluated by several doctors who declined to prescribe any limitations in Plaintiff's ability to do work-related activities. (R. 166, 245, 247-49.) For instance, Dr. Allen did not cite any limitations regarding Plaintiff's impairment. (R. 166.) In addition, Dr. Ahstrom reported that there was no anatomical reason for Plaintiff's pain and that he "would place no restrictions on the use of [Plaintiff's] wrist and hand whatsoever." (R. 245, 247-49.) Moreover, while Dr. Tsai treated Plaintiff and ordered that she undergo occupational therapy for her hand impairment, he did not render an opinion of Plaintiff's functional capabilities. Furthermore, the fact that Plaintiff was fitted with a splint and had been advised to wear a brace at nighttime does not mean that her hand impairment was "severe." Thus, the ALJ concluded that there was little or no physical impairment that produced pain or other limitations for Plaintiff.

Therefore, the Court finds that substantial evidence supports the ALJ's determination that

Plaintiff's hand impairment was not "severe."

## II. PLAINTIFF'S MOTION FOR REMAND

Plaintiff argues that a remand is warranted in this case for consideration of new and material evidence. Pl.'s Mot. for Remand at 1-3. Specifically, Plaintiff asserts the case should be remanded so that the ALJ can consider (1) any and all evidence developed in conjunction with Plaintiff's subsequent application for DIB and SSI, based on psychological conditions, which she filed on May 16, 2001, and (2) Dr. L.S. Boddapati's (psychiatrist) February 6, 2001 letter concerning Plaintiff's psychological state which was included as part of Plaintiff's May 16, 2001 application.[7] Pl.'s Mot. for Remand at 2. Defendant, however, argues that (1) Plaintiff has failed to show how the evidence in the application is new and material; and (2) how Dr. Boddapati's letter is material, as the letter does not relate to the period on or prior to the date of the ALJ's decision. Def.'s Mem. at 2-3.

The Court may remand the case for consideration of new and material evidence, provided that there is good cause for the failure to submit the evidence to the agency during prior proceedings. 42 U.S.C. § 405(g); *Sample v. Shalala*, 999 F.2d 1138 (7th Cir. 1993). Plaintiff bears the burden of proof that the evidence is new and material and that good cause exists. To establish materiality, a plaintiff must show a "reasonable probability" that the ALJ would have reached a different disposition of the disability claim if presented with the new evidence. *See Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) (*quoting Sears v. Bowen*, 840 F.2d 394, 400 (7th Cir.1998)). Moreover, evidence is not material if it addresses only a claimant's condition after the ALJ issued his decision. *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir.1989).

The Court finds Plaintiff's wholly conclusory and unspecified request for remand for

---

[7]Plaintiff was subsequently found disabled based on her May 16, 2001 application. Pl.'s Mot. for Remand at 2.

14

consideration of "all evidence" developed in conjunction with her May 16, 2001 application unavailing. *See e.g., Dubinski ex rel. v. Van Schindel v. Bowen,* 808 F.2d 611, 614 (7th Cir. 1986); *Luna,* 22 F.3d at 692 n.5.

The Court also finds Plaintiff's request for remand, premised on Dr. Boddapati's report, unavailing. Specifically, the Court notes that Dr. Boddapati's February 6, 2001 letter addresses Plaintiff's health condition after the ALJ's hearing decision on December 4, 1998, and does not relate to the period on or prior to his decision.[8] In fact, Plaintiff states in her Motion for Remand that she did not submit Dr. Boddapati's letter to the Appeals Council "because it did not meet the standards for the Appeals Council's consideration of new evidence, as it did not relate to the period prior to the ALJ's decision." Pl.'s Mot. for Remand at 2. *See e.g.,* 20 C.F.R. § 404.970(b); 20 C.F.R. § 416.1470(b). The Court, therefore, finds that Dr. Boddapati's letter is not new, material evidence because it does not address Plaintiff's condition at the time the ALJ made his decision.

## CONCLUSION[9]

In view of the foregoing, the Court grants Plaintiff's Motion for Summary Judgment insofar as it requests a remand for an appropriate consultative psychological evaluation, denies Plaintiff's Motion for Remand, and denies Defendant's Motion for Summary Judgment. Accordingly, the case is remanded to the Commissioner for further proceedings consistent with this opinion.

---

[8]According to Dr. Boddapati's February 6, 2001 letter, he began seeing Plaintiff a few months after the police forcefully entered her home on October 1999. Dr. Boddapati notes that Plaintiff reported developing health problems after this incident. Dr. Boddapati stated that Plaintiff "is victimized due to the incident with the police in October of 1999 and she still suffers from emotional difficulties." *See* Dr. Boddapati's February 6, 2001 letter.

[9]In view of the Court's ruling herein, it is deemed unnecessary to consider Plaintiff's and Defendant's other argument(s). Both parties can present their positions on these arguments to the ALJ upon remand.

15

ENTER:

_____
IAN H. LEVIN
United States Magistrate Judge

Dated: March 7, 2002